```
IN THE UNITED STATES DISTRICT COURT
  FOR THE NORTHERN DISTRICT OF TEXAS
            DALLAS DIVISION

PATRICK LEE,                     §
                                 §
             Plaintiff,          §
                                 § Civil Action No. 3:06-CV-0873-D
VS.                              §
                                 §
GROUP 1 SOFTWARE, INC.,          §
                                 §
             Defendant.          §
```

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Patrick Lee ("Lee") against defendant Group 1 Software, Inc. ("Group 1") alleging claims for retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code § 21.001 *et seq.* (Vernon 2006),[1] the dispositive question presented is whether Lee has produced sufficient proof of causation to withstand Group 1's motion for summary judgment. Concluding that he has not, the court grants the motion and dismisses this case with prejudice.

---

[1]As the court noted in *King v. Enterprise Leasing Co. of DFW*, 2007 WL 2005541 (N.D. Tex. July 11, 2007) (Fitzwater, J.): "'Chapter 21 was entitled the Texas Commission on Human Rights Act until the abolishment of the Commission on Human Rights. In 2004, the 'powers and duties' of the Commission on Human Rights were transferred to the Texas Workforce Commission Civil Rights Division.'" *Id.* at *1 n.1 (quoting *Tex. Dep't of Criminal Justice v. Guard*, 2007 WL 1119572, at *2 n.3 (Tex. App. 2007, no pet. h.) (not designated for publication)). As in *King*, the court for clarity will refer to this claim as brought under the TCHRA.

I

In March 2002 Lee began working for Group 1 as the Regional Sales Manager of the Texas region.[2]  He reported to Alan Teicher ("Teicher"), Vice-President of sales, who in turn reported to the Executive Vice-President, Andy Naden ("Naden").

Before Lee arrived at Group 1, and in the months that followed his arrival, several female employees and former employees of Group 1's Dallas office—which Lee had been hired to lead—made sexual harassment and retaliation allegations against Group 1 and Naden. Based on these allegations, the women filed a Title VII lawsuit. *See Reynolds-Diot v. Group 1 Software, Inc.,* No. 3:03-CV-0245-M (N.D. Tex. filed Feb. 4, 2003) (Lynn, J.) (the "*Reynolds-Diot Suit*").  One of the plaintiffs in the suit, Sally Rose ("Rose"), worked under Lee until resigning her employment in September 2002. During that period, Lee attempted to prevent Naden from retaliating against Rose for her role in the *Reynolds-Diot Suit* by opposing Naden's attempts to put hostile language in disciplinary actions against Rose, promising Rose he would protect her from Naden, and telling Group 1's legal counsel and human resources personnel that he was doing so.

In May 2003 Lee met with Carrie Hoffman, Esquire, Group 1's

---

[2]The court recounts the evidence in a light favorable to Lee as the summary judgment nonmovant and draws all reasonable inferences in his favor. *E.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

attorney in the *Reynolds-Diot Suit*, and discussed his knowledge concerning the matters at issue in the litigation. After the meeting, Hoffman sent a summary of her interview with Lee to Group 1's in-house attorney, who in turn forwarded a copy to Lee. Lee forwarded a copy to Naden, at his request. Almost 20 months later, and 27 months after Rose resigned her employment, Group 1 terminated Lee.

Lee now sues Group 1, alleging that it terminated his employment in retaliation for his interviewing with Hoffman and for opposing the discrimination against Rose.[3] Group 1 moves for summary judgment.[4]

## II

### A

Under Title VII, it is unlawful for an employer to discriminate against an employee because the employee has "opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title

---

[3]In his complaint, Lee alleges a third type of protected activity: association with persons opposing discrimination. He does not attempt to support this claim in response to Group 1's summary judgment motion, and he has apparently abandoned it. Assuming *arguendo* that he has not relinquished this claim, Group 1 is entitled to summary judgment because a reasonable jury could not find in his favor.

[4]Group 1 later moved to strike Lee's summary judgment appendix and for leave to file a supplemental appendix. The court denies these motions as moot.

VII. 42 U.S.C. § 2000e-3. Similarly, the TCHRA provides that "[a]n employer . . . commits an unlawful employment practice if the employer . . . retaliates or discriminates against a person who . . . (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." Tex. Lab. Code Ann. § 21.055 (Vernon 2006). The court will analyze Lee's Title VII and TCHRA retaliation claims together, because "[t]he . . . purpose of the TCHRA is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964. Thus, 'analogous federal statutes and the cases interpreting them guide' the reading of the statute." *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004) (citations omitted) (citing Tex. Lab. Code Ann § 21.001(1) (Vernon 1996); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001)).

B

Where, as here, the employee offers no direct evidence that his employer retaliated against him, the method of proof set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies. *E.g.*, *Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (citing *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001)). Under the *McDonnell Douglas* framework, Lee must first establish a prima facie case of retaliation. This requires that he demonstrate that (1) he

engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action. *Walker*, 2005 WL 2278080, at *9 (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)).

1

Lee alleges that he opposed discrimination against Rose and participated in a Title VII proceeding (by interviewing with Hoffman), and that his employment was terminated because of this conduct. The court will assume *arguendo* that he has adduced sufficient evidence to support these allegations and to establish a prima facie case of retaliation.

2

Next, the burden shifts to Group 1 to articulate a legitimate, nondiscriminatory reason for the alleged retaliatory action taken. This burden is one of production, not of persuasion. *Id*. Group 1 has met its burden by adducing evidence that Lee underperformed in his position as Sales Manager for several months, and that at the time of his termination, his region was the lowest performing region in his supervisor's territory and had obtained only 48% of the sales quota.

3

Finally, the burden shifts back to Lee to adduce evidence that would permit a reasonable jury to find that the adverse employment

action would not have occurred "but for" the protected conduct. *Id.* The showing of causal connection at this stage is "more onerous than that initially required to present a prima facie case." *Phillips v. Credit Lyonnais*, 2002 WL 1575412, at *8 n.4 (N.D. Tex. July 16, 2002) (Fish, C.J.). Lee can satisfy this burden by adducing evidence that would permit a reasonable trier of fact to find that the "stated reason [for termination] is actually a pretext for retaliation." *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 755 (5th Cir. 2005) (internal quotation marks omitted). Further, although the Fifth Circuit has not yet held a "mixed motives" analysis to be applicable to Title VII retaliation claims, the court will assume *arguendo* that it is, and that Lee can also satisfy his burden by establishing that Group 1 possessed "mixed motives" for terminating him. *See Akop v. Goody Goody Liquor, Inc.*, 2006 WL 119146, at *10 (N.D. Tex. Jan. 17, 2006) (Fitzwater, J.). Under a mixed motives analysis, Lee "need only offer sufficient evidence to create a genuine issue of fact that [Group 1's] reason for terminating him, although true, was but one of the reasons for its conduct, another of which was retaliation." *Id.* (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

### III

The court holds that Lee has failed to carry his burden of producing evidence that would enable a reasonable jury to find that

there is a causal connection between his protected conduct and his termination.

A

Lee has adduced no evidence that anyone at Group 1 had a retaliatory animus—or would have had any reason to harbor one—because of Lee's participation in the Hoffman interview. Although Lee alleges that Naden was "obsessed" with his role in the *Reynolds-Diot Suit*, the only evidence he offers in support of this contention is that Naden was consumed by the lawsuit generally. *See* P. App. 19, 24. There is no evidence in the record that would enable a reasonable jury to infer that Naden had feelings or beliefs about Lee, individually, as a result of his submitting to the interview with Group 1's counsel, or even that Lee had said anything during the interview that would have generated such feelings or beliefs.

Lee's attempt to infer retaliatory motive from allegedly contradictory statements by Group 1 employees—which, he argues, show that Group 1 is hiding something—is unavailing. First, his allegation that Naden contradicted Group 1's stated reasons for discharging him is unsupported by the record. Although Naden did state that "*some* of the [grounds for dismissal cited in a letter written by Teicher] were inaccurate with respect to the

characterizations," P. App. 22 (emphasis added),[5] he specifically agreed with the characterization that Lee lacked skills to move his team forward and deliver desirable results. *Id.* at 33. This accords with Lee's own assessment that he failed to deliver expected results during the final three quarters of his employment. *See* D. App. 240.

Second, he cites testimony by Teicher—who had previously recommended that Lee be discharged—that Naden had ordered him in December 2004 to follow through with that recommendation,[6] which apparently conflicts with Naden's testimony that he did not think he was involved in the final termination decision. Absent evidence, however, that Lee's employers had an animus toward him regarding the Hoffman interview, this contradiction does little more than show that the witnesses have faded memories of the events in question. A reasonable jury could not rely on this evidence, alone or in combination with other proof in the summary judgment record, to find the required causal link between Lee's protected

---

[5]The context in which this statement was made should be noted. Naden was not speaking directly to the content of the letter, but rather more generally to his objection to the fact that a letter had been drafted in the first place. In his words, Lee was already an "at will employ[ee]" who was about to be terminated, so there was no need to "put his nose in" it by writing a letter. P. App. 22.

[6]Teicher elsewhere indicates that Naden requested a memorandum of him, but the court is unable to determine what he is referring to, because Lee's appendix does not contain the full context within which the statement was made. *See* P. App. 14.

conduct and his termination.

Third, Lee points to his own testimony that in May 2003 he forwarded the Hoffman memorandum to Naden upon request, which contradicts Naden's testimony that he never saw the memorandum. Again, absent evidence that the content of the memorandum would have triggered an animus by Naden to retaliate, Naden's testimony that he did not see the memorandum would not enable a reasonable jury to find causation or pretext.

B

The insufficiency of Lee's evidence is also confirmed by the fact that a considerable period of time elapsed between the period of his protected conduct and the date he was terminated. Assuming that Naden did receive the memorandum and was aware of the Hoffman interview in May 2003, and assuming that he had reason to retaliate at that time based on the statements Lee made in the interview, the fact that 20 months elapsed before Lee was discharged makes it implausible that he was fired as an act of retaliation. *See, e.g., Mayberry v. Mundy Contract Maint. Inc.,* 197 Fed. Appx. 314, 317 (5th Cir. 2006) (per curiam) (holding that time-period of roughly two years between protected conduct and ultimate termination was too long to establish causal connection); *Dean v. Xerox Corp.,* 1997 WL 756574, at *6 (N.D. Tex. Nov. 25, 1997) (Fitzwater, J.) (holding that period of 18 months was too long); *Akop*, 2006 WL 119146, at *3 (concluding that period of eight months between discriminatory

remarks by employer and termination was too long); *see also Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 590 (5th Cir. 1995) (in worker's compensation context, holding that period of 15-16 months between filing of claim and ultimate discharge was too long).

Lee's contention that the relevant time period is actually much shorter—because Group 1 made the decision to terminate him immediately after the Hoffman interview—is unsupported by the record. Although Lee identifies a "performance improvement plan" that was drafted for him at some point during his employment (it was never actually presented), and suggests that this plan was developed in response to the Hoffman interview, the only indication from the record is that it was drafted before Group 1 learned of the interview and possibly before the interview took place.

Lee's allegation that he was terminated for opposing discrimination against Rose fails for similar reasons. The only evidence Lee has adduced to support a causal connection between the two events is that Naden made some hostile remarks about his relationship with Rose during her employment with Group 1. But this occurred at least 27 months before Lee was terminated. The temporal proximity between the statements and Lee's discharge is simply too attenuated for his claim to survive summary judgment. *See, e.g., Akop*, 2006 WL 119146, at *3 (holding that discriminatory remarks made eight months before discharge were not probative of

discriminatory discharge).

IV

Having failed to adduce sufficient evidence to enable a reasonable jury to find that his termination was retaliatory, Lee asserts in the alternative that his supervisors' ultimate decision *not* to put him on a formal "performance improvement plan" was itself a form of retaliation. This type of retaliatory conduct was not alleged as part of Lee's prima facie case, and Group 1 did not have opportunity to address it in its initial summary judgment motion.

Where a party raises arguments outside the scope of its pleadings, the court may construe those arguments as an implicit motion to amend. *See Ganther v. Ingle*, 75 F.3d 207, 211-12 (5th Cir. 1996) (per curiam); *Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir. 1972). Doing so here, the court denies the motion because Lee neither attempts to show, nor does the court discern, any "good cause" for his failure to seek leave to amend before the court's Fed. R. Civ. P. 16(b) deadline for such motions. *See* Rule 16(b); *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997)("[Rule] 16(b) allows a scheduling modification only for good cause.").

Accordingly, the court grants Group 1's motion for summary judgment.

V

Group 1 requests that the court award it attorney's fees under Title VII. The court may award attorney's fees to a prevailing defendant, in its discretion, if it determines that the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978); *Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.). The court declines to find that this lawsuit is frivolous, unreasonable, or without foundation, as those concepts are understood in the law. Accordingly, the court denies Group 1's request.

\* \* \*

Group 1's May 15, 2007 motion for summary judgment is granted, and this action is dismissed with prejudice by judgment filed today. Group 1's October 5, 2007 motions to strike appendix and for leave to file a supplemental appendix are denied as moot.

**SO ORDERED.**

January 7, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE